## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## WESTERN DIVISION

No. 5:11-CV-364-F

| | |
|---|---|
| C.H., a minor, LINDA A. HUGHES and<br>ROBERT W. HUGHES, | )<br>)<br>) |
| Plaintiffs,<br>v.<br>UNITED STATES OF AMERICA,<br>Defendant. | )<br>)<br>)      MEMORANDUM AND ORDER<br>)<br>)<br>)<br>) |

Now before the court is the motion to dismiss filed by Defendant United States of America [DE-26], in which the government seeks dismissal of the complaint filed by Plaintiffs C.H., Linda Hughes, and Robert Hughes [DE-1].[1] The matter has been fully briefed and is now ready for disposition. For the reasons stated below, the motion will be DENIED.

## I. STANDARD OF REVIEW

The government filed its motion to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. The existence of subject matter jurisdiction is a threshold issue which must be addressed before the court can reach the merits of the case. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 95-102 (1998); *accord Jones v. Am. Postal Workers Union*, 192 F.3d 417, 422 (4th Cir. 1999). It is a fundamental rule that a court has "jurisdiction to determine [its] jurisdiction." *Greenwich Fin. Servs. Distressed Mortg. Fund 3 LLC v. Countrywide Fin. Corp.*, 603 F.3d 23, 27 (2d Cir. 2010). Subject matter jurisdiction is both a constitutional and statutory requirement which restricts federal judicial power to a limited set of cases and controversies. Thus, "no action of the

---

[1] The instant motion to dismiss, which challenges the court's subject matter jurisdiction, was filed after the close of discovery. If at any time the court finds that it lacks subject matter jurisdiction, it must dismiss the action. *See* Fed.R.Civ.P. 12(h)(3).

parties can confer subject-matter jurisdiction upon a federal court." *Ins. Corp. of Ir. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982). A defendant may challenge subject matter jurisdiction pursuant to Rule 12(b)(1) facially or factually. *See Wollman v. Geren*, 603 F. Supp. 2d 879, 882 (E.D. Va. 2009). If the government presents a facial challenge by arguing the complaint fails to allege facts upon which subject matter jurisdiction can be based, all facts alleged in the complaint are presumed true. *See Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). Alternatively, if the government presents a factual challenge by arguing that jurisdictional facts alleged in the complaint are untrue, the court may consider extrinsic information beyond the complaint to determine whether subject matter jurisdiction exists. *See Kerns v. United States*, 585 F.3d 187, 192-93 (4th Cir. 2009). In both situations, the burden rests with the party seeking federal jurisdiction to prove that federal jurisdiction is proper. *See Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). Indeed, as this is an action asserted against the government brought pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 et seq., it is Plaintiffs' burden "to prove an unequivocal waiver of sovereign immunity and the existence of subject matter jurisdiction." *LeRose v. United States*, 285 F. App'x 93, 96 (4th Cir. 2008).

When a defendant challenges subject matter jurisdiction, "the district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Id.* (citations omitted). A district court should grant a Rule 12(b)(1) motion to dismiss "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Richmond*, 945 F.2d at 768 (citation omitted); *see Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999).

2

## II. FACTS

The following facts are alleged in the complaint and are accepted as true for purposes of the instant motion. On October 19, 2009, Plaintiff C.H. was attending the North Carolina State Fair with his parents, Plaintiffs Linda and Robert Hughes, and other members of his family. At approximately 3:30 p.m., Plaintiffs visited a display presented by the North Carolina National Guard. The National Guard display included exhibition of a Bradley Fighting Vehicle ("BFV"), which was open to the public. Staff Sergeant Thomas Farlow and Corporal Christopher Dethmers, uniformed members of the National Guard, were present at the National Guard display. Plaintiff C.H. entered the BFV with the permission and consent of the National Guard, along with several other children. While Plaintiff C.H. was inside the BFV, the fire suppression system within the BFV activated,[2] which caused a high force propulsion of gaseous material to burn Plaintiff C.H.'s back. The activation of the fire suppression system also caused Plaintiff C.H.'s head to strike an object inside the BFV, fracturing his skull and lacerating his face.

The parties also cite evidence outside of the complaint, which is properly considered without converting the instant motion to one seeking summary judgment. Specifically, Plaintiffs set forth evidence indicating that neither Farlow nor Dethmers was standing near the entrance to the BFV at the time of the incident involving Plaintiff C.H. Rather, both were manning a different part of the National Guard display, the rock wall exhibit.

The parties also dispute the significance of a letter of instruction issued by Master Sergeant Elliot Marks (then a First Sergeant). This letter of instruction, attached to an email distributed prior

---

[2] Other evidence indicates that another child crawled into the driver's compartment of the BFV and triggered its fire suppression system.

3

to the state fair, stated general information for the service members who would be operating the National Guard display, including where personnel were to park, when personnel were to report, and what uniform personnel were to wear. The letter of instruction also stated that "one" service member "*must* be stationed near the rear" of the BFV "at all times to ensure safety," and that two service members "*must*" man the rock wall or it "will be shut down until there are proper numbers of personnel." [DE-29-9 at 2 (emphases added).] The letter also indicated that "[t]he primary focus will be on safety." [*Id.*]

Plaintiffs assert a claim of negligence against the government pursuant to the FTCA for money damages as compensation for the personal injuries sustained by Plaintiff C.H. In this regard, Plaintiffs allege that members of the National Guard: (1) failed to deactivate the fire suppression system in the BFV prior to inviting visitors to enter the BFV; (2) failed to warn visitors of the unsafe conditions in the BFV; (3) kept and maintained the BFV in an unsafe and hazardous condition that created an unnecessary risk of injury to visitors; (4) knew or should have known of the unsafe and hazardous conditions in the BFV and failed to take reasonable actions to remove said conditions; (5) failed to keep the premises of the BFV fit for the foreseeable uses of the fair attendees; (6) knew or should have known of the inadequacy of any posted warnings of the unsafe conditions in the BFV, and failed to remove the unsafe conditions; and (7) knew or should have known that any posted warnings of danger presented by the BFV would be inadequate or ineffective in alerting minors of the unsafe conditions. [DE-1 at 4-5.]

### III. ANALYSIS

In support of its motion to dismiss, the government argues that, in hosting an event at the state fair, the National Guard balanced its need to recruit and retain soldiers while, at the same time,

4

keeping its equipment combat ready. The government argues that the letter of instruction was issued to provide safety and operational guidance for the National Guard display, but that the letter stated policies that were created using the judgement of Marks and that delegated discretion to the service members manning the display. The government argues that the alleged negligent acts fall into two categories: (1) maintenance of the BFV; and (2) management and operation of the BFV. The government argues that both categories, as well as the personnel decisions of the military, are subject to policy analysis and therefore fall within the discretionary function exception of the FTCA. Accordingly, the government argues that the court lacks subject matter jurisdiction over this action.

Plaintiffs, on the other hand, argue that the letter of instruction created a mandatory duty such that actions performed in contravention of it do not fall within the discretionary function exception. Alternatively, Plaintiffs argue that even if the court finds that the letter of instruction did not establish a mandatory duty, the decisions at issue in this case are not grounded in the type of social, economic, or political policies that are intended to be covered by the discretionary function exception. Accordingly, Plaintiffs argue this court has subject matter jurisdiction under the FTCA.

**A.  Sovereign Immunity, the FTCA, and the Discretionary Function Exception**

The Supreme Court has stated that "the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell*, 463 U.S. 206, 212 (1983). Under this doctrine of sovereign immunity, "the United States is immune from private civil actions absent an express waiver." *Lutfi v. United States*, No. 11-1966, 2013 WL 1749526, at *4 (4th Cir. Apr. 24, 2013) (citation omitted). "Sovereign immunity is jurisdictional in nature." *Fed. Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 475 (1994); *see also J.C. Driskill, Inc. v. Abdnor*, 901 F.2d 383, 385 n.4 (4th Cir. 1990). Accordingly, if a plaintiff has not alleged or

5

demonstrated that the government has waived sovereign immunity with regard to a claim asserted against it, that claim must be dismissed for lack of jurisdiction. *Abdnor*, 901 F.2d at 385-86.

The FTCA provides a limited waiver of the sovereign immunity "of the United States for certain torts committed by federal employees." *Ignacio v. United States*, 674 F.3d 252, 253 (4th Cir. 2012) (quotation omitted). In order for the FTCA to apply, a plaintiff must make a claim

(1) against the United States, (2) for money damages, . . . (3) for injury or loss of property, or personal injury or death (4) caused by the negligent or wrongful act or omission of any employee of the Government (5) while acting within the scope of his office or employment, (6) under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

*Kerns*, 585 F.3d at 194 (quotation omitted) (alterations in original). For purposes of this motion, it appears that the government does not argue that Plaintiffs' claims are not properly brought pursuant to the FTCA or that Plaintiffs have failed to allege the elements necessary to assert an FTCA claim.

Rather, the government argues that Plaintiffs' claims fall within the discretionary function exception of the FTCA. The discretionary function exception applies to "[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." *Holbrook v. United States*, 673 F.3d 341, 345 (4th Cir. 2012) (quotation omitted) (alterations in original). When the exception is asserted, the fundamental issue for the court to decide is "whether the government action at issue involves an element of judgment or choice that is based on considerations of public policy." *Id.* (quotation omitted). If the exception applies, "the courts lack federal subject matter jurisdiction." *Id.*

Determination of the applicability of the discretionary function exception generally requires

6

a two-step analysis. *See Rich v. United States*, 158 F. Supp. 2d 619, 628 (D. Md. 2001). First, a court must decide whether the government action involves an element of discretionary judgment or choice, as opposed to a failure to act in accordance with a mandatory duty. "A government employee's conduct does not involve discretion where a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow and the employee has no rightful option but to adhere to the directive." *Holbrook*, 673 F.3d at 345 (quotation omitted). FTCA claims that do not involve an element of discretionary judgment or choice are not barred by the exception.

Second, if a court determines that the government conduct involves an element of discretionary judgment or choice, then a court must then determine "whether that judgment is of the kind that the discretionary function exception was designed to shield, i.e., whether the challenged action is based on considerations of public policy." *LeRose*, 285 F. App'x at 97 (quotation omitted). "[A] reviewing court in the usual case is to look to the nature of the challenged decision in an objective, or general sense, and ask whether that decision is one which we would expect inherently to be grounded in considerations of policy." *Suter v. United States*, 441 F.3d 306, 311 (4th Cir. 2006) (quotation omitted). "[D]ecisions grounded in social, economic, and political policy" are of the kind "that the discretionary function exception was designed to shield." *Smith v. Wash. Metro. Area Transit Auth.*, 184 F. App'x 311, 315 (4th Cir. 2006) (quotation omitted). Accordingly, not all discretionary decisions (i.e., those actions not directly governed by a statute or regulation) come within the discretionary function exception; rather, the court must evaluate the discretionary decision to determine if the required policy considerations exist.

To determine whether the challenged discretionary decisions are grounded in policy, the court should evaluate "whether the challenged acts of a Government employee—whatever his or her

7

rank—are of the nature and quality that Congress intended to shield from tort liability." *United States v. Varig Airlines*, 467 U.S. 797, 813 (1984); *see also United States v. Gaubert*, 499 U.S. 315, 325 n.7 (1991) ("If [a government official] drove an automobile on a mission connected with his official duties and negligently collided with another car, the [discretionary function] exception would not apply. Although driving requires the constant exercise of discretion, the official's decisions in exercising that discretion can hardly be said to be grounded in regulatory policy."). With regard to this "policy judgment" test, the court finds *Claypool v. United States*, 103 F. Supp. 2d 899 (S.D. W. Va. 2000), to be instructive. The plaintiff in *Claypool* filed suit against the government, alleging that a boulder fell on her car, resulting in the death of her mother, because the National Park Service failed to maintain and repair an embankment. The court in *Claypool* undertook a thorough survey of discretionary function exception cases before arriving at the following conclusion:

> At first impression, [these cases] seem at odds. However, a closer reading of these cases demonstrates common threads. For instance, when the Government fails to act because to do so would cause great financial expense or constitute a substantial effort, courts will generally presume the inaction to be a policy decision. . . . When a safety measure requires substantial expense to the Government, significant budgetary concerns are implicated. A court will not second guess the Government's decision on how best to allocate its finite resources. However, in order to prevent the Government from relying on budgetary concerns that in effect will result in the exception swallowing the rule, a failure to take safety measures that do not entail significant cost is not considered policy-based.

*Id.* at 907 (internal citations omitted). Ultimately, the court in *Claypool* ruled that the discretionary function exception applied in that case, finding that the government had produced evidence (in the form of an uncontested affidavit) that the discretionary decision not to maintain the embankment was based on policies to preserve the natural beauty of the park and to allocate differently limited human and financial resources. *Id.* at 908.

8

Relevant to this case, the court notes that "when discretionary decisions are ones of professional military discretion, they are due the courts' highest deference." *Minns v. United States*, 155 F.3d 445, 451 (4th Cir. 1998) (citation omitted). "Of the legion of governmental endeavors, perhaps the most clearly marked for judicial deference are provisions for national security and defense." *Tiffany v. United States*, 931 F.2d 271, 277 (4th Cir. 1991) (citation omitted). Nevertheless, "[t]he military does not enjoy a blanket exemption from the need to proceed in a non-negligent manner," and particularly when "acting in a civilian arena, national defense interests may be more remote and the military faces different restrictions." *Id.* at 280 (citing *Peterson v. United States*, 673 F.2d 237, 240 (8th Cir. 1982) ("The planning level of the Air Force training and evaluation missions, which would include the development of the route for the mission at issue here, is protected within this discretionary function exception. Nevertheless, the discretionary function exception does not protect the United States from liability for operational negligence in carrying out such a mission. The United States is not protected if the pilot operating the B-52 which flew over [the plaintiff's] farm was negligent in implementing the policy decisions made by Government officials." (quotations omitted)));[3] *see also Birke v. United States*, No. 4:08CV1607MLM, 2009 WL 1605771, at \*9 (E.D. Mo. June 8, 2009) ("The actions of the Air Force in assisting the Society and choosing the . . . location for the Society to view aircraft were grounded in Air Force policy directed

___

[3] In *Dalehite v. United States*, 346 U.S. 15 (1953), the Supreme Court distinguished between operational-level decisions and planning-level decisions. However, the Supreme Court later clarified that this distinction "was merely description of the level at which the challenged conduct occurred" and that "[t]here was no suggestion that decisions made at an operational level could not also be based on policy." *Gaubert*, 499 U.S. at 326. Some post-*Dalehite*, pre-*Gaubert* cases distinguish between operational-level and planning-level decisions. The court does not herein make such a determination because distinguishing between operational-level and planning-level decisions would not be dispositive of the issue and the court would still be required to evaluate whether the relevant discretionary decisions were grounded in policy considerations.

9

at enhancing the public's understanding and appreciation for the Air Force as set forth in [Air Force Instruction] 35–101. Further, the record before this court does not reflect that AFI 35–101 includes specific directives regarding tours of Air Force bases. Thus, AFI 35–101 gives broad discretion to Air Force Personnel in regard to its implementation. However, the discretion at issue in the matter under consideration, facilitating the Society's tour and choosing a location for the Society to observe aircraft, did not itself entail policy considerations, nor is the discretion at issue susceptible to a policy analysis.").

## B.    Plaintiffs' Claims

As an initial matter, the court agrees with the government that the letter of instruction did not create mandatory duties actionable under the FTCA, regardless of whether the recipient service members believed that it needed to be followed. The court has not been directed to a statute or regulation that required Marks to issue the letter of instruction. Further, the court agrees that a myriad of circumstances may have arisen that would have permitted deviation from the letter of instruction. Indeed, given that the letter of instruction stated that "safety" was the primary focus, if at any time service members manning the National Guard display determined that considerations of safety required that they act in a manner otherwise inconsistent with the letter of instruction, they appear to have been authorized to use their discretion to do so. It cannot be said, therefore, that service members at the display had no rightful option but to adhere to the directives of the letter of instruction. Accordingly, the court finds that the letter of instruction was a statement of guidelines, issued through the discretion accorded to Marks and within which the recipient service members could exercise some degree of discretion.

With regard to the second question—whether the challenged actions are based on

10

considerations of public policy—the court is mindful of the importance of judicial restraint in matters where the discretionary decisions of the military are concerned. As such, if Plaintiffs' allegations concerned merely the discretionary decisions about the manner in which the BFV was maintained and managed by the military or the personnel decisions of the military, the court would be inclined to agree with the government that this action falls within the discretionary function exception of the FTCA. Whether or not to erect a National Guard display at the North Carolina State Fair, how many service members the military would send to a National Guard display, what kinds of service members the military would send to a National Guard display, whether or not to include a BFV exhibit in a National Guard display, and whether or not to disable certain components of the BFV exhibit (including the fire suppression system) are all discretionary decisions that involve maintenance and deployment of military equipment and personnel that are surely policy driven and therefore shielded by the discretionary function exception.

However, Plaintiffs' allegations do not merely entail the aforementioned maintenance, management, and personnel decisions. Rather, the allegations go a step further and implicate the discretionary decisions of the service members manning the National Guard display regarding whether or not to allow civilian visitors (including children) to enter the BFV exhibit, what kind of warning to give civilian visitors (including children) entering the BFV exhibit, and what level of supervision the civilian visitors (including children) entering the BFV exhibit should receive *in light of* the maintenance, management, and personnel decisions that had been made. Such discretionary decisions are not subject to a policy analysis; therefore, they are not of the kind that the discretionary function exception was designed to shield. Indeed, considering the letter of instruction's statement that *safety* was the primary focus, it is simply not possible to accept the government's position that

11

the discretionary decisions made by the service members manning the National Guard display were based on policy considerations, such as resource allocation, military preparedness, or recruiting concerns.

Evaluating the actual conduct challenged by Plaintiffs in an objective and general sense, the court finds that Plaintiffs' claims do not fall within the discretionary function exception of the FTCA. Accordingly, the court will DENY the government's motion to dismiss.

## IV. CONCLUSION

For the above stated reasons, it is ORDERED that the government's motion to dismiss [DE-26] is DENIED.

SO ORDERED.

This the 4 day of June, 2013.

James C. Fox
JAMES C. FOX
Senior United States District Judge

12